Michael D. Prough (SBN 168741)
mdp@proughlaw.com
Dean C. Burnick (SBN 146914)
dcb@proughlaw.com
Yas-Banoo Omidi (SBN 254962)
yo@proughlaw.com
PROUGH LAW, APC
1550 Parkside Dr., Ste. 200
Walnut Creek, CA  94596
Telephone: 925-433-5894

Attorneys for Plaintiff
RLI INSURANCE COMPANY

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| RLI INSURANCE COMPANY, an Illinois Corporation,<br><br>                    Plaintiff,<br><br>        v.<br><br>HOSPITAL ASSOCIATION OF SOUTHERN CALIFORNIA, a California Nonprofit Corporation; NATIONAL HEALTH FOUNDATION, a California Nonprofit Corporation; and GEORGE GREENE, an individual,<br><br>                    Defendants. | No. 2:23-cv-08932<br><br>COMPLAINT |

Plaintiff RLI Insurance Company ("RLI") asserts the following complaint against Hospital Association of Southern California ("HASC"), National Health Foundation ("NHF"), and George Greene ("Greene") (collectively, the "Insureds").

1.      This dispute relates to insurance coverage for a lawsuit filed against the Insureds, captioned *Bruno et l. v. National Health Foundation et al.*, Los Angeles Superior Court case no. 23STCV09092 (the "Underlying Action"). Each of the Insureds is a defendant in the Underlying Action.

2.      RLI has been defending the Underlying Action, under a reservation of rights, pursuant to Non-Profit Asset Protection Policy EPG0030428, effective

5/18/2022 to 5/18/2023 (the "Policy")—specifically, an Employment Practices and Third Party Discrimination Liability ("EPL") coverage section of that Policy.

3.     Coverage is barred for the Underlying Action because the Insureds misrepresented and concealed material facts in applying for insurance under the Policy, including facts directly bearing upon the claims that have been asserted in the Underlying Action. Coverage under the policy incepted on May 18, 2022. Prior to May 18, 2022, the Insureds knew, but did not disclose to RLI, *inter alia*, that: (a) Ms. Bruno had resigned as Chief Executive Officer of NHF on April 7, 2022; (b) Ms. Cameron had resigned as Chief Strategy Officer of NHF on April 18, 2022; (c) a third female executive of NHF had also resigned on or about April 18, 2022; and (d) nine of the thirteen members of NHF's Board of Directors had resigned between May 2 and May 3, 2022 expressing their concern, in a written, signed resignation letter, for their potential civil liability, should the executive leadership team pursue claims of harassment, retaliation and wrongful termination. The Insureds knew of not only those resignations of the female executive leadership team and of the majority of the Board of Directors, but also of the underlying facts and circumstances giving rise to those resignations, including Ms. Bruno's and Ms. Cameron's claims and allegations of wrongful termination. Ms. Bruno and Ms. Cameron are now the plaintiffs in the Underlying Action.

4.     Under the terms of the Policy and California law, misrepresentation or concealment of material facts in applying for insurance stands as a bar to any claim for coverage arising from or related to matters not disclosed. Accordingly, RLI owes no duty to defend or indemnify the Insureds for the Underlying Action on this basis, while reserving all other rights under the Policy, at law and in equity.

## THE PARTIES

5.     Plaintiff RLI is a corporation organized and existing under the laws of the State of Illinois, with its principal place of business in Peoria, Illinois. RLI is a citizen of Illinois.

6.     Defendant HASC is a nonprofit public benefit corporation organized and existing under the laws of California, with its principal place of business in Los Angeles, California. HASC is a citizen of California.

7.     Defendant NHF is a nonprofit public benefit corporation organized and existing under the laws of California, with its principal place of business in Los Angeles, California. NHF is a citizen of California.

8.     Defendant Greene is an individual residing in Los Angeles County, and a citizen of California.

## JURISDICTION AND VENUE

9.     The Court has original jurisdiction over the present action under 28 U.S.C. § 1332, because there exists complete diversity of citizenship between the parties, and the amount in controversy exceeds $75,000. The applicable Policy limits affected by the claims for declaratory relief are $5 million, and the monetary claims at issue in the Underlying Action seek in excess of $75,000. Venue is proper within this District pursuant to 28 U.S.C. §§1391(b)(1)-(2) and 1391(c)(1)-(2). All named defendants are subject to personal jurisdiction in this District, and additionally, a substantial part of the events or omissions giving rise to the claim occurred in this District.

## FACTS

10.     The Insureds submitted their written Application for the RLI Policy on or about March 24, 2022. The main "Asset Protection Policy Application" form, within each of its three coverage sections, including under the heading "V. Employment Practices and Third Party Discrimination Liability Coverage Section Information", included the following:

**PRIOR KNOWLEDGE/REPRESENTATION**

**IT IS IMPORTANT THAT YOU FILL IN THE BLANK IN THIS PARAGRAPH.** No insured proposed for coverage is aware of any facts, circumstance, investigations or actions which he or she has reason to suppose might give rise to a future claim that would fall within the scope of proposed coverage, except

1    _____; or [ ] None

2    It is agreed that if such facts, circumstances, investigations or actions
     exist, whether or not disclosed, any claim arising from them is
3    excluded from this proposed coverage.

4    11.    The Insureds' response was marked "[X] None" and the blank was left

5    unfilled.

6    12.    The "Appendix" to the signed application included a series of specific

7    questions and statements for the Insureds to respond to or acknowledge. One

8    statement, and the Insureds' response, read:

9    **It is agreed that if such facts, circumstances, investigations or
     actions exist, whether or not disclosed, any claim arising from
10   them is excluded from the proposed Employment Practices and
     Third Party Discrimination Liability Coverage.**  Acknowledged.
11

12   13.    The Insureds also submitted a completed addendum to the application

13   as part of their submission to RLI, providing information and asking questions

14   regarding the different requested coverage sections, including "Employment

15   Practices and Third Party Discrimination Liability Information." In response to "No

16   insured proposed for coverage is aware of any facts, circumstances, investigations

17   or actions which he or she has reason to suppose might give rise to a future claim

18   that would fall within the scope of proposed Employment Practices and Third Party

19   Discrimination Liability", the typed response was "Not aware of any facts" under

20   each of two columns: "HASC/CLC/AllHealth" and "NHF."

21   14.    Immediately above the signature line of the Application, appeared the

22   following language:

23                           **MATERIAL CHANGE**

24   Signing of this application does not bind the Applicant or the
     Insurer. If there is a material change in the answers to the
25   questions prior to the Policy inception date the Applicant will
     notify the Insurer in writing and any outstanding quotation or
26   indication may be modified or withdrawn.

27

28

## DECLARATION AND SIGNATURE

> The undersigned is an authorized representative of the Applicant, and hereby certifies that he or she has made reasonable inquiries to obtain and provide the answers, information and documentation that is responsive to the questions and requests contained in this application, and represents that the answers, information and documentation is true, accurate and complete to the best of their knowledge and belief. … [T]he undersigned agrees that this application and its attachments shall be the basis of the contract should a Policy be issued and shall be deemed attached to and shall form part of the Policy….

15.     The Application was signed by Scott Twomey, identified as "SVP-CFO", on March 18, 2022.

16.     A true and correct copy of the Application, including addenda, is attached hereto as **Exhibit 1**.

17.     On April 7, 2022, Ms. Bruno resigned. Each Insured knew this. No Insured informed RLI. No Insured changed or amended the information provided on the Application.

18.     On April 14, 2022, acting in reliance upon the Insureds' original Application, RLI issued a Quote for the requested coverage, including EPL coverage. In the Quote Letter, RLI stated:

> Further, these terms are strictly conditioned upon there being no material change in the risk between the date of this letter and the inception date of the proposed policy. If we determine such material change has occurred, we reserve the right to modify the terms, up to and including withdrawal of the terms.

19.     RLI's April 14, 2022 Quote Letter enclosed a specimen policy form, which included the following language (also contained within the actual Policy when it was thereafter issued):

> A. Representations

> The Insureds represent and acknowledge that the statements and information contained in the Application are true and complete, are the basis of this Policy and are to be considered as incorporated into and constituting a part of this Policy. This Policy is issued in reliance upon the truth and completeness of such representations.

20. RLI's April 14, 2022 Quote Letter enclosed a specimen policy form, which included the following language (also contained within the actual Policy when it was thereafter issued):

> The Insureds represent and acknowledge that the statements and information contained in the Application are true and complete, are the basis of this Policy and are to be considered as incorporated into and constituting a part of this Policy. This Policy is issued in reliance upon the truth and completeness of such representations.

21. On April 18, 2022, Ms. Cameron resigned, and on or about that same date or within two days thereafter, another female executive of NHF also resigned. Each Insured knew of the resignations. No Insured informed RLI. No Insured changed or amended the information provided on the Application.

22. On or about April 21, 2022, Ms. Cameron executed a severance agreement, agreeing to release all claims in exchange for $82,400.11; but on May 1, 2022, NHF allegedly reversed the direct deposit of the payment that had been made and renounced the severance agreement as allegedly unauthorized.

23. On or about May 2 and May 3, 2022, nine of the thirteen members of the NHF Board of Directors signed a letter of resignation, including a stated concern for their own civil liability, should the executive leadership team pursue claims of harassment, retaliation and wrongful termination. Each Insured knew of the mass resignation and the letter. No Insured informed RLI. No Insured changed or amended the information provided on the Application.

24. On May 17, 2022, the Insureds accepted RLI's April 14, 2022 Quote, and requested from RLI that coverage be bound. Later that same day, RLI bound coverage for the Policy, with an effective date of May 18, 2022. The Insureds and RLI exchanged a number of communications between the date of the original Application and the effective date of the Policy. At no time in any of those communications or otherwise did the Insureds disclose the adverse facts and circumstances that had occurred, involving the executive leadership team, Ms. Bruno, Ms. Cameron, and/or the Board of Directors, nor did the Insureds correct or

amend the information that had been provided on the Application.

25.   A true and correct, certified copy of the Policy is attached hereto as **Exhibit 2**.

26.   On or about May 26, 2022, Cameron made a written demand for monetary payment and demanded certain records from and evidence preservation by the Insureds. The Insureds did not notify RLI of the Claim.

27.   On April 24, 2023, Ms. Bruno and Ms. Cameron filed the Underlying Action. A true and correct copy of the Complaint is attached hereto as **Exhibit 3**.

28.   On April 28, 2023, the Insureds forwarded the Complaint to RLI, constituting their first notice to RLI of any of the facts or circumstances regarding the allegations of Ms. Bruno and Ms. Cameron.

29.   On May 25, 2023, RLI agreed to participate in the defense of the Underlying Action, subject to a reservation of rights. RLI agreed to defend HASC and NHF on a primary basis, as insureds under the Policy (subject to the Retention); and RLI acknowledged the insured status of Mr. Greene as a "leased employee," excess to the coverage being afforded under a policy that another insurer had issued in favor of his actual, direct employer, California Association of Hospitals and Health Systems ("CAAHS"). On October 3, 2023, RLI issued a supplemental reservation of rights letter.

30.   RLI has reserved all rights with respect to each of its Insureds, under the Policy, at law and in equity, including but not limited to the rights to seek reimbursement for all sums expended by RLI on the defense of or indemnification for uncovered claims.

## FIRST CLAIM FOR RELIEF

### (No Duty to Defend – Common Law Misrepresentation or Concealment)

31.   RLI re-alleges and incorporates herein by reference all previous paragraphs of this complaint, as though fully set forth herein.

32.   California Insurance Code § 332 provides: "Each party to a contract of

insurance shall communicate to the other, in good faith, all facts within his knowledge which are or which he believes to be material to the contract and as to which he makes no warranty, and which the other has not the means of ascertaining." Section 330 defines "concealment" to mean "Neglect to communicate that which a party knows, and ought to communicate." Section 356 provides that "completion of the contract of insurance is the time to which a representation must be presumed to refer." Under sections 331, 338, and 359, concealment, failure to disclose, or misrepresentation of material facts support rescission of an insurance contract. As an alternative to rescission, an insurer may also raise the concealment, nondisclosure or misrepresentation by the insured as a defense against any claim or suit under the Policy.

33.    The Insureds breached their statutory duty to RLI in conjunction with their application for the Policy, by misrepresenting that they were aware of no facts or circumstances that might give rise to a future claim, and by concealing their awareness of the resignations of Ms. Bruno, Ms. Cameron, a third female executive, and nine of the thirteen members of NHF's Board of Directors, including allegations and asserted claims for gender-based discrimination, harassment, retaliation and wrongful termination.

34.    The facts that were misrepresented, not disclosed and concealed were material to the risk being underwritten by RLI, particularly, the EPL coverage.

35.    RLI reasonably relied on its Insureds to honestly and fully disclose all material information known to them and relevant to the risk insured.

36.    RLI contends that the Insureds' misrepresentations, non-disclosure and/or concealment operate to bar coverage, including any duty to defend the Underlying Action under the Policy. The Insureds disagree, and dispute that contention.

37.    By virtue of the foregoing, there exists a present, justiciable controversy between RLI and the Insureds.

38.     RLI requests a declaration of the parties' rights and obligations, to wit, a Declaratory Judgment that RLI owes no duty to defend any and all of the Insureds in the Underlying Action under the Policy, because of the misrepresentations, non-disclosure and concealment in the application process.

**SECOND CLAIM FOR RELIEF**

**(No Duty to Indemnify – Common Law Misrepresentation or Concealment)**

39.     RLI re-alleges and incorporates herein by reference all previous paragraphs of this complaint, as though fully set forth herein.

40.     California Insurance Code § 332 provides: "Each party to a contract of insurance shall communicate to the other, in good faith, all facts within his knowledge which are or which he believes to be material to the contract and as to which he makes no warranty, and which the other has not the means of ascertaining." Section 330 defines "concealment" to mean "Neglect to communicate that which a party knows, and ought to communicate." Section 356 provides that "completion of the contract of insurance is the time to which a representation must be presumed to refer." Under sections 331, 338, and 359, concealment, failure to disclose, or misrepresentation of material facts support rescission of an insurance contract. As an alternative to rescission, an insurer may also raise the concealment, nondisclosure or misrepresentation as a defense against any claim or suit under the Policy.

41.     The Insureds breached their statutory duty to RLI in conjunction with their application for the Policy, by misrepresenting that they were aware of no facts or circumstances that might give rise to a future claim, and by concealing their awareness of the resignations of Ms. Bruno, Ms. Cameron, a third female executive, and nine of the thirteen members of NHF's Board of Directors, including allegations and asserted claims for gender-based discrimination, harassment, retaliation and wrongful termination.

42.     The facts that were misrepresented, not disclosed and concealed were

1    material to the risk being underwritten by RLI, particularly, the EPL coverage.

2         43.    RLI reasonably relied on its Insureds to honestly and fully disclose all

3    material information known to them and relevant to the risk insured.

4         44.    RLI contends that the Insureds' misrepresentations, non-disclosure

5    and/or concealment operate to bar coverage, including any duty to indemnify the

6    Insureds for any judgment or settlement that may be entered in the Underlying

7    Action, under the Policy. The Insureds disagree, and dispute that contention.

8         45.    By virtue of the foregoing, there exists a present, justiciable

9    controversy between RLI and the Insureds.

10        46.    RLI requests a declaration of the parties' rights and obligations, to wit,

11   a Declaratory Judgment that RLI owes no duty to indemnify any and all of the

12   Insureds for any judgment or settlement in the Underlying Action, under the Policy,

13   because of the misrepresentations, non-disclosure and concealment in the

14   application process.

15                        **THIRD CLAIM FOR RELIEF**

16   **(No Duty to Defend – Contract Defenses, Misrepresentation and Concealment)**

17        47.    RLI re-alleges and incorporates herein by reference all previous

18   paragraphs of this complaint, as though fully set forth herein.

19        48.    In addition to the statutory and common law defenses, RLI's Policy

20   contains contractual defenses to coverage in the event of misrepresentations and

21   concealment by an Insured.

22        49.    Section IX.A Representations provides: "The Insureds represent and

23   acknowledge that the statements and information contained in the Application are

24   true and complete, are the basis of this Policy and are considered as incorporated

25   into and constituting a part of this Policy. This Policy is issued in reliance upon the

26   truth and completeness of such representations." "Application" is a defined term,

27   meaning "the signed, written application for this Policy or any coverage section of

28   this Policy, …. Including all document and materials attached to or submitted with

or incorporated into such application(s). All such application(s), documents, materials and filings are deemed attached to and incorporated into this Coverage Section."

50.    One clause from the Application that is incorporated by reference into the Policy, the "Prior Knowledge/ Representation" provision quoted at Paragraph no. 9, above, provides that "if such facts, circumstances, investigations or actions exist," that an Insured is aware of in applying for the insurance, then "whether or not disclosed, any claim arising from them is excluded from this proposed coverage." This clause operates as an exclusion to the Policy and bars any potential for coverage for the Underlying Action.

51.    Another clause from the Application that is incorporated by reference into the Policy, quoted at Paragraph no. 11, above, provides the Insured's acknowledgement that "if such facts, circumstances, investigations or actions exist, whether or not disclosed, any claim arising from them is excluded from the Employment Practices and Third Party Discrimination Liability Coverage." This clause operates as an exclusion to the Policy and bars any potential for coverage for the Underlying Action.

52.    Section IX.B Severability provides:

> The Application shall be construed as a separate application for coverage by each of the Insureds. If with respect to any coverage section the Application contains any misrepresentation or omission which materially affects either the acceptance of the risk or the hazard assumed by the Insurer under such coverage section, then the Insurer shall not be liable under such coverage section to pay any Loss on account of, and shall not be obligated to defend, any Claim based upon, arising out of or attributable to the facts that were not accurately and completely disclosed in the Application to the extent such Loss is incurred by:
>
> 1.    any Entity as indemnification of an Insured Person who knew the facts that were not truthfully disclosed in the Application; or
>
> 2.    any Entity and its Subsidiaries and Insured Plans if an Executive Officer of such Entity knew the facts that were not truthfully disclosed in the Application; whether or not such Executive Officer or Insured Person knew the

Application contained such misrepresentation or omission. No knowledge of one Insured Person shall be imputed to any other Insured Person for purposes of this Section IX.

53.    Because Mr. Greene as an "Insured Person" and as an "Executive Officer" of both NHF and HASC knew the facts that were not truthfully disclosed in the Application, or at any point before the Policy incepted, Section IX.B separately operates to bar coverage. Mr. Twomey, who signed the Application, was also an "Executive Officer" and knew the facts that were not truthfully disclosed.

54.    For each of the foregoing reasons, RLI contends that the Policy provisions bar any potential for coverage and thus that it owes no duty to defend any or all of the Insureds against the Underlying Actions. The Insureds disagree and dispute that contention.

55.    By virtue of the foregoing, there exists a present, justiciable controversy between RLI and the Insureds.

56.    RLI requests a declaration of the parties' rights and obligations, to wit, a Declaratory Judgment that RLI owes no duty to defend any and all of the Insureds against the Underlying Action, under the Policy, because of the misrepresentations, non-disclosure and concealment in the application process.

**FOURTH CLAIM FOR RELIEF**

**(No Duty to Indemnify – Contract Defenses, Misrepresentation and Concealment)**

57.    RLI re-alleges and incorporates herein by reference all previous paragraphs of this complaint, as though fully set forth herein.

58.    In addition to the statutory and common law defenses, RLI's Policy contains contractual defenses to coverage in the event of misrepresentations and concealment by an Insured.

59.    Section IX.A Representations provides: "The Insureds represent and acknowledge that the statements and information contained in the Application are

true and complete, are the basis of this Policy and are considered as incorporated into and constituting a part of this Policy. This Policy is issued in reliance upon the truth and completeness of such representations." "Application" is a defined term, meaning "the signed, written application for this Policy or any coverage section of this Policy, …. Including all document and materials attached to or submitted with or incorporated into such application(s). All such application(s), documents, materials and filings are deemed attached to and incorporated into this Coverage Section."

60.     One clause from the Application that is incorporated by reference into the Policy, the "Prior Knowledge/ Representation" provision quoted at Paragraph no. 9, above, provides that "if such facts, circumstances, investigations or actions exist," that an Insured is aware of in applying for the insurance, then "whether or not disclosed, any claim arising from them is excluded from this proposed coverage." This clause operates as an exclusion to the Policy and bars any coverage for the Underlying Action.

61.     Another clause from the Application that is incorporated by reference into the Policy, quoted at Paragraph no. 11, above, provides the Insured's acknowledgement that "if such facts, circumstances, investigations or actions exist, whether or not disclosed, any claim arising from them is excluded from the Employment Practices and Third Party Discrimination Liability Coverage." This clause operates as an exclusion to the Policy and bars any coverage for the Underlying Action.

62.     Section IX.B Severability provides:

> The Application shall be construed as a separate application for coverage by each of the Insureds. If with respect to any coverage section the Application contains any misrepresentation or omission which materially affects either the acceptance of the risk or the hazard assumed by the Insurer under such coverage section, then the Insurer shall not be liable under such coverage section to pay any Loss on account of, and shall not be obligated to defend, any Claim based upon, arising out of or attributable to the facts that were not accurately and completely disclosed in the

Application to the extent such Loss is incurred by:

1.    any Entity as indemnification of an Insured Person who knew the facts that were not truthfully disclosed in the Application; or

2.    any Entity and its Subsidiaries and Insured Plans if an Executive Officer of such Entity knew the facts that were not truthfully disclosed in the Application; whether or not such Executive Officer or Insured Person knew the Application contained such misrepresentation or omission. No knowledge of one Insured Person shall be imputed to any other Insured Person for purposes of this Section IX.

63.    Because Mr. Greene as an "Insured Person" and as an "Executive Officer" of both NHF and HASC knew the facts that were not truthfully disclosed in the Application, or at any point before the Policy incepted, Section IX.B separately operates to bar coverage. Mr. Twomey, who signed the Application, was also an "Executive Officer" of HASC and of NHF and knew the facts that were not truthfully disclosed.

64.    For each of the foregoing reasons, RLI contends that the Policy provisions bar coverage and thus that it owes no duty to indemnify any or all of the Insureds against the Underlying Actions. The Insureds disagree and dispute that contention.

65.    By virtue of the foregoing, there exists a present, justiciable controversy between RLI and the Insureds.

66.    RLI requests a declaration of the parties' rights and obligations, to wit, a Declaratory Judgment that RLI owes no duty to indemnify any and all of the Insureds for any judgment or settlement entered in the Underlying Action, under the Policy, because of the misrepresentations, non-disclosure and concealment in the application process.

**FIFTH CLAIM FOR RELIEF**

**(Declaratory Judgment – Other Contractual Defenses)**

67.    RLI re-alleges and incorporates herein by reference all previous

paragraphs of this complaint, as though fully set forth herein.

68.    RLI's defense and investigation of the Underlying Action has been conducted under a full reservation of rights.

69.    The Policy contains three distinct Coverage Sections: A. Management and Entity Liability; B. Employment Practices and Third Party Discrimination Liability; and C. Fiduciary Liability.

70.    Section A, Management and Entity Liability, is inapplicable to the Underlying Action, and the Insureds have asserted no claim under that coverage section.

71.    Section C, Fiduciary Liability, is inapplicable to the Underlying Action, and the Insureds have asserted no claim under that coverage section.

72.    The Insuring Clause of the EPL Coverage Section provides that RLI "will pay on behalf of the Insureds, Loss incurred by the Insureds as a result of Claims first made against the Insureds during the Policy Period … by or on behalf of a past, present, prospective or alleged Employee for a Wrongful Employment Act." "Loss" is a defined term that generally means "monetary amounts the Insureds are legally obligated to pay as a result of a covered Claim," as defined therein, and exempting from the definition certain remedies, including: "(ii) severance pay or damages determined to be owing under an express contract of employment or an express obligation to make such payments in the event of termination of employment…; (vi) salary, wages, commissions, bonuses, non-deferred cash incentive compensation, Stock Benefits or other compensation if actually or allegedly earned by the claimant in the court of employment…; (viii) other matters uninsurable pursuant to the law under which this Coverage Section shall be construed, except as otherwise provided above."

73.    Coverage is barred for some of the claims alleged in the Underlying Action, to the extent they do not fall within the Insuring Clause of the EPL Coverage Section, including its definition of Loss. Specifically, the Underlying

- 15 -

Action's 9th and 10th causes of action are premised on Ms. Cameron's claims for severance pay and thus are not within the definition of covered "Loss"; and all claims for exemplary and punitive damages are uninsurable as a matter of California public policy. California is the only state with a connection to the Underlying Action or the Insureds. Any damages awarded for the Underlying Action's 2nd cause of action (retaliation) or 8th cause of action (intentional infliction of emotional distress) are also uninsurable pursuant to California law and public policy, including Insurance Code Section 533, and coverage is denied on that basis.

74.     There exists a present, justiciable controversy between RLI and the Insureds regarding the extent of coverage owed, if any, under the Policy, for the claims asserted in the Underlying Action.

75.     RLI requests a declaration of the parties' rights and obligations, to wit, a Declaratory Judgment that RLI owes no duty to indemnify any and all of the Insureds for any judgment or settlement entered in the Underlying Action, to the extent that the claims or damages are not covered under the Policy and/or are uninsurable as against California public policy.

### SIXTH CLAIM FOR RELIEF

### (RECOUPMENT OF AMOUNTS PAID ON UNCOVERED CLAIMS)

76.     RLI re-alleges and incorporates herein by reference all previous paragraphs of this complaint, as though fully set forth herein.

77.     RLI has provided a defense in the Underlying Action under a full reservation of rights, including the right to claim recoupment of all sums expended by it on the defense of, or indemnification for, uncovered claims.

78.     RLI has incurred sums on the defense of the Underlying Action, for which it in fact owes no potential coverage and thus no duty to defend.

79.     RLI is entitled to and hereby seeks the recoupment of all sums that are or will be expended by RLI toward the defense of the Underlying Action, in whole or in part, to the extent that such sums were expended on the defense of uncovered

claims. In the event, and to the extent that, RLI were to pay any amounts for indemnity, RLI is also entitled to, and would seek, the recoupment of those sums also, in whole or in part, in an amount to be proven at trial.

## PRAYER FOR RELIEF

Wherefore, RLI Insurance Company respectfully prays for relief as follows:

1.      On its First Claim for Relief, a declaratory judgment that RLI owes no duty to defend the Insureds in the Underlying Action;

2.      On its Second Claim for Relief, a declaratory judgment that RLI owes no duty to indemnify the Insureds for the Underlying Action;

3.      On its Third Claim for Relief, a declaratory judgment that RLI owes no duty to defend the Insureds in the Underlying Action;

4.      On its Fourth Claim for Relief, a declaratory judgment that RLI owes no duty to indemnify the Insureds for the Underlying Action;

5.      On its Fifth Claim for Relief, a declaratory judgment that RLI owes no duty to indemnify the Insured for the Underlying Action;

6.      On its Sixth Claim for Relief: for monetary damages, in an amount to be proven at trial, reflecting all sums expended by RLI on the defense or settlement of uncovered claims;

7.      For costs of suit, to the extent permitted by law; and

8.      For such other and further relief as the Court may deem just and proper.

Dated:  October 23, 2023                  PROUGH LAW, APC


                                          By: */s/ Michael D. Prough*
                                              Michael D. Prough

                                          Attorneys for Plaintiff
                                          RLI Insurance Company